Ms. Brown. Thank you, Judge Carnes. My name is Bruce Brown, and along with Renee Octavia Stevens is a professor of political science at Northwestern University and the founding director of the Deportation Clinic at Northwestern's Buffett Institute for Global Studies. Stevens was awarded the Guggenheim Fellowship in recognition of her scholarship, and her scholarship has focused on the unlawful deportation of United States citizens by the Executive Office of Immigration Review, which is called EOR in the papers. Stevens' widely published work caused the events that gave rise to this litigation. EOR has been tracking Professor Stevens for years. She has attracted the attention of the Executive Office of Immigration Review at the highest levels of the agency. They were tracking her not because she was dangerous or because she was a threat or disruptive or any way. They were tracking her because she had been a highly effective, highly critical scholar and journalist, and she had focused not just on the agency but in particular upon the work of Defendant Judge Cassidy. And all that may be true, but the issue before us is whether or not Judge Cassidy gets absolute judicial immunity. Judge Carnes, he does not. Why is that? The reasons he does not, two main reasons that I'll explore in greater detail. First, he did not have jurisdiction. He acted in the total absence of jurisdiction. Second, his actions were not a judicial function. With respect to the jurisdictional issue, as you know, the facts are, and the government has admitted that they I assume now in your briefing you had, I think there had been some argument that this is not even a doctrine that's available to immigration judges. And I gather that you're getting down to the standard, you're pulling back a little from that argument, and you think conceptually there are instances where an immigration judge could receive absolute judicial immunity. We would argue both. I was going straight to the second one. Even if you recognize that immigration judges as a class were eligible for absolute immunity, that it should not be applied in this case. I think there's strong arguments that they should not. Was there below an analysis, the Butts analysis, where there was a comparison of the decision-making function of an immigration judge with the decision-making function under the Administrative Procedure Act judges? So, for example, did the court below note that the Administrative Procedure Act by statute requires its judges to be impartial and there is no such component part statutorily for immigration judges? Immigration judges have a collective bargaining agreement and can be terminated at will. Other agency judges for good cause. Was that analysis done? No, Your Honor. We had argued, as we continue to argue, that the Butts case actually sets the framework for the argument that immigration judges should not be entitled as a class to absolute judicial immunity. Because what the Butts case says is the Butts case goes through all the protections that the APA provides to APA judges. And then says, for those judges who have those protections or are within a system where those protections attach, we will allow them to have absolute judicial immunity. And so if they don't have those protections, then they're not. And immigration judges do not. They can't consult. Administrative judges can't consult with other agency officials about a matter, which doesn't sound like this case. So there was no determination of comparators, I guess. No, there wasn't. The assumption was that it's an executive department judicial officer. Therefore, Butts controls. Therefore, they're immune. That was the extent of it. Now, immigration judges, and this is very important, even if you got over that initial hurdle that they would be as a class entitled to it, they would have a problem on the jurisdictional issue, which actually covers both the nature of them as judges and also the extent of their jurisdiction if you wanted to accord them at least tentatively the possibility of having absolute immunity. They don't have contempt authority. As to your jurisdictional argument on the courtroom closing, clearly an immigration judge under the regulations has the power to close a courtroom, correct? The immigration judge has the power to close the courtroom. That's correct. We argue separately in our request for declaratory relief that that needs to be amplified and we need to have relief on that score. But as to the damages claim, the primary damages claim is the action of Judge Cassidy in having the Federal Protective Service guards, over whom the government has admitted he had no jurisdiction, evict Dr. Stevens from the federal building. So that's the focus of your argument, the eviction from the building? That's the focus of the damages claim, yes, Your Honor. And that immigration judges, even if you accorded them generally judicial status, interestingly, they weren't even called judges until 1996. Before that, they were called special inquiry officers. Well, I can remember when bankruptcy judges were called referees, too. So I don't – it was interesting. The names are not – certainly the names are not controlling. It's their function. It's their independence. And it's whether they should be, just as a matter of federal court policy in recognizing immunity in cases such as this. That's the whole purpose of Butts and Cleavanger. It's not the label. It's what's being done. Sure. And Cleavanger, I think, was the prison parole board. Wood v. Strickland was a similar type of case where they were adjudicators, but they didn't have these stripes and probably were called judges also. But they didn't have really the stripes to the real authority to the strong medicine of absolute immunity should be applied. Well, having – Judge Carnes, having focused what you're saying is and is not, so is now your position that under Barrett that there is a qualified – to see if the facts Barrett – bear out liability? Yes. Our position, and I think the law is clear, is that if the defendant does not plead as an affirmative defense, which Cassidy did not do, by the way. Didn't even answer. He was in default, which was lifted. But he never pleaded as an affirmative defense. Never pleaded – Like qualified immunity? He didn't plead anything. He didn't answer. He didn't plead anything as an affirmative defense, which is required under the case involving Judge Guido Calabresi. Judge Calabresi didn't plead it as an affirmative defense. And the 11th Circuit pounded him on that and actually reversed the case and said the district judge shouldn't have let him go because he didn't plead it as an affirmative defense. We raised that below and we raised that here. And we've never gotten an explanation from Judge Cassidy or the United States as to why they should be given a free ride on that. But you are concerned about an ongoing problem. You have bigger fish to fry. So I assume if you could help us a little on the merits, I think that would help. Sure. Sure. On the jurisdictional claim, it is critically important, I would believe, if you look at the two worst cases for – the best cases for the government are the Supreme Court cases of Stump v. Sparkman and Morales v. Waco. Those would be the far edge of pushing absolute judicial immunity. And if you look at those cases, both of them – Stump v. Sparkman is where the judge signed a horrible order that would sterilize the plaintiff's daughter. He was immune from liability. But the Supreme Court looked at that and said, you know, we're looking at the Indiana statutes. And the Indiana statutes give that judge the authority to enter an order regarding sterilization. They didn't just say he generally has that authority. They had specific authority. Here, there is no statute that gave Cassidy anything remotely to the authority to even speak to the FBS officers, much less throw a citizen out of the federal building on Spring Street. Nothing even close to that. But if I understand your brief, you, I believe, concede that federal district judges, state court judges, have inherent authority to have someone removed from a building if they think that's necessary. They might be wrong, but decorum, safety, whatever, the authority. You argue that immigration judges don't have that same inherent authority because there's no statute, and they have. They can only do things that statutes tell them they can do. Absolutely. In fact, Congress has been very clear in this respect. Congress has legislated this issue. Federal magistrates, for example, have contempt authority over people who they. . . We're not talking about contempt. Let me ask you, Mr. Brown. Let's say you have a scenario where it's a really volatile situation, and the immigration judge has asked somebody to leave, but it's spilling over into the hall. There have been threats. There's concern about witness intimidation. Is that judge supposed to sit mute and the security guard's not there? He's not going to know what happens. Is the judge supposed to just let that situation simmer and do nothing just because there's a statute that doesn't give him authority to order security forces to do anything? No, Your Honor. We're not talking about restraining the judge from doing what he needs to do. The issue is whether the judge should be given absolute immunity or the same kind of immunity as the police officer in your example or the police officer in the next case, the Atlanta police officer, which is still robust immunity in which if he's sued, he can still have qualified immunity. And here the position of the United States is Judge Cassidy did not, in fact, alert. . . didn't, even though there's other evidence, didn't alert anybody because there was no security issue to be alerted about. It was merely, I'm sealing this case because it's appropriate and you need to step outside. So there was nothing of what Judge Carnes is understandably concerned about. I think it would be important in the reversal to make it clear that there will be circumstances in which Article III judges or other properly immunized judges have the inherent authority to maintain the dignity and decorum of the courtroom. But here, number one, this particular federal official doesn't have that kind of broad, inherent, or statutory contempt authority. And number two, this didn't happen. This happened when his courtroom was quiet. It was as quiet as this courtroom will be in an hour. And that is conceded. In fact, that is Cassidy's story is that he left and nothing was happening. The whole idea that he needed to do this to maintain the dignity and decorum of the courtroom is simply nonsense on stilts. It's a fiction. It never happened. In reversing, I think . . . I think your time is almost up, so if you could . . . I'll reserve the rest of my time. We look forward to hearing from you again. Thank you, Judge. May it please the Court. Good morning, Your Honors. Christopher Hollis on behalf of Federal Defendant Appelese. This case at base, Your Honors, is about a judge's control of his courtroom. Maintaining control of the courtroom and maintaining judicial independence over some fractious decisions that judges have to make. Where was the fractious? I don't even understand from the beginning, Mr. Hollis. Where was the fractious? There was a request to leave the courtroom because it was being sealed. I don't think anyone disagrees that a judge has that right. But then Ms. Stevens was taken out by security out of the building. How does that . . . How does that in any way comport with either the authority of this judge or the circumstances as they're related on this record? Your Honor, my reference to fractious decisions goes to the subject matter of immigration judges that they deal with daily. And the need to maintain control of a courtroom when certain claims are made, particularly before immigration judges, with regard to, say, for example, asylum. Right. Claims against a nation, a state. And he did. He said, go outside. Yes, Your Honor. And she did. She went outside. Yes, Your Honor. And to the extent that you want to focus on removal from the building, we can focus on that. And the government's position is that because immigration judge Cassidy had subject matter jurisdiction over that underlying case, in which a conversation transpired between Ms. Stevens and Judge Cassidy, because he had subject matter jurisdiction over that case, the events that followed flow from that. Then how do you square the decision in Barrett where the court makes two discreet analyses? One, somebody is being critical of a judge, saying things that the judge doesn't like. That judge says to the police, I think this person is stalking me, and swear out a complaint. That is a function of the case. Two, the judge goes before the media and says, that gentleman is stalking me. The court says, no, that's not really a judicial function. How is barring the media different from saying something to the media in terms of getting immunity for Judge Cassidy? Well, Your Honor, I think one of the distinctions here is that Professor Stevens was not a respondent in this case, although that does not preclude subject matter jurisdiction for immigration judge Cassidy to do something as drastic, and the government doesn't admit this, but we assume an argument for purposes of discussion. It allows for something as drastic as ordering removal from the building, even though she wasn't a respondent in that immigration hearing, Your Honor. But she also wasn't a security threat. So you're going to give, in the immunity context, more room for the immigration judge to operate than is actually even given an Article III judge. Well, Your Honor, there is Supreme Court precedent that holds that a judge has the authority to exercise control over the courtroom and the courthouse premises, Your Honor. Under certain circumstances, protesters, belligerent litigants, a security threat, none of the factors are present here. Well, Your Honor. Except that she was very critical of the judge. And in Barrett, it talks about the fact that that balance has to be made of the importance and the right, in this case of a litigant, to say, you know, critical things about the judge. There can be no chilling effect of that in determining whether or not immunity applies. Well, Your Honor, whether Ms. Stevens was critical or not, on the day that she was removed from the courtroom, excuse me, from the court building, the courthouse. There's some confusion here because it's a federal building and the courthouse is located, the courtroom is located in the federal building. Anyway, on the day in question, Professor Stevens was allowed to view immigration hearings before Judge Cassidy. She was in the courtroom in the first place and that's when this conversation transpired. So there's no question that she, despite her criticisms of Judge Cassidy, there's no question that she was allowed to observe hearings on April 19, 2010, Your Honor. Right.  And then, according to the record, depending on who, and this is a disputed issue of fact, I would think, either Judge Cassidy, after he took a break and talked to other people, which it seems is inappropriate under the APA, after he talked to other people, she was ejected from the building. So under Barrett, I think as to the first decision, yes, there is immunity. As to the second, I think at most there is a qualified immunity question which has not been addressed. Your Honor, it is a tremendous hurdle for plaintiffs to overcome the pronouncements of the Supreme Court in stump that, for example, acting in excess of jurisdiction is not going to bar immunity. Acting in error is not going to bar the application of judicial immunity. Grave procedural error is not going to bar. Malicious or corrupt, alleged malicious or corrupt intentions is not going to bar the application of judicial immunity. So regardless of what sort of allegations there are in the record regarding any animus Judge Cassidy may have had towards Plaintiff Stevens, that's not going to, those sorts of allegations are not going to bar the application of judicial immunity. The motivations of Judge Cassidy are not relevant, Your Honor. So Barrett is in derogation of stump because that's not the question. The question is, is it a judicial function to, in this instance, speak to the press in the case at bar, no pun intended, to bar the press? It seems to me it's the flip side of the same coin, and the court here clearly states that's a qualified immunity situation under all the law. But then getting back to what I had said earlier, there was no analysis under the Supreme Court of whether or not the functions performed by the immigration judges comported with the APA. No, there was, stump did not directly address whether immigration judges are, fit within the rubric of having judicial immunity applied to them. But in Butts, Your Honor, the Supreme Court found that federal officials who perform adjudicatory functions are entitled to judicial immunity. And the Butts court didn't make carve-outs for those who aren't ALJs. No, they left it to the courts, and then the courts took it up and said, parole officials, no. And since judges in the state system are treated the same in the federal system, school board officials, no. There have been cases that have taken Butts and examined it, but I just don't think it happened here. And I don't think, I don't know how you get around Barrett in terms of the second act, the barring from the building. Well, Your Honor, the fact that, the government's position is that jurisdiction is not eliminated here because it involved removal from the building. The position is instead that, as I mentioned at the beginning, everything flowed from the hearing closure. In fact, by plaintiff's own pleadings, in her First Amendment complaint, paragraphs 46 through 53, we see that it was less than 20 minutes space between the time that Ms. Cassidy had a discussion with Judge Cassidy and the time that she was removed from the building. So the Miami Herald came in to my courtroom, and I had to seal it because, and by the way, I don't get to seal because people say, I'd like this to be private. I have to make findings, and it has to be according to the law, not the party's desire. But if I say, this is a sealed proceeding, and Mr. Weaver, you need to step outside. So your argument is, I can then call the marshals and say, and take him out of the building. Your Honor. Because it's all part of the same litigation. It's all part of the same litigation. Agreed, Your Honor. But the distinction here is that to argue that there was absolutely no disturbance involved here, or that there wasn't any sort of history of, I'll call it aggression from Ms. Stevens, is to overlook other record testimony of instances where courtroom administrators named defendants had encountered plaintiffs. So I can take into account their characterization of her ranting and raving as aggression, but I can't take into account the fact that officials had been tracking her for a few months and qualify that in any way. Your Honor, you can take that into account, but the flip side of tracking Ms. Cassidy is that when, excuse me, the flip side of tracking Professor Stevens is that to the extent that Ms. Stevens wants to view hearings, there's an argument to be made that she was accommodated to view those hearings. She was allowed to view hearings, Your Honor. This isn't a series of nothing but courtroom closures and ejection from the Atlanta Immigration Court, Your Honor. Ms. Stevens has been allowed to see hearings. After she was asked, why are you here? I don't know that that, my CSOs usually don't ask people why they're in a public courtroom. Your Honor, to your point about asking why you're here. Or telling her maybe she can't be here and then getting that squared away. Your Honor, there are merits hearings in front of immigration judges involve very delicate issues for the immigrant respondents that are in front of them. Some of them involve claims of torture. Some of them involve claims. Me too. I have some of those sometimes. Okay. But what I'm getting to, Your Honor, is that there are regulations here that allow, and these regulations are unchallenged, and this is a big part of appellant's case that's missing here. These regulations that allow immigration judges' discretion to close immigration hearings for the protection of witnesses, for the protection of parties, for the protection of the public interest, or just in the judge's discretion, that's not addressed by appellants here. It's not challenged. The reg is not challenged. The regulation is not challenged by appellants here. And I agree with you. And there's no argument made about why Judge Cassidy lacked discretion to close the hearing. And, again, I'm sorry, Your Honor. I'm having a little difficulty following some of the arguments. Let me, your position, briefly state. Number one, the judge is a judge because of his adjudicatory functions. He is a federal judge. Yes, Your Honor. Therefore, he gets the judicial immunity that federal judges get. Correct, Your Honor. And that the decision of a judge to direct someone to leave the courthouse or for someone to lead someone out of the courthouse is within the range of judgments that a federal judge can make. Yes, that's a judicial act. Maybe a terrible judgment. It could be a very bad judgment, but it is still a judgment within the range of what they can make. Yes, Your Honor, terrible or no. So defending Judge Cassidy's individual actions is not essential to the outcome of the case as far as you are concerned. It's not part of the inquiry here, Your Honor. To the extent that judicial immunity applies to Judge Cassidy, even if Judge Cassidy, in layman's terms, screwed up, judicial immunity would shield him from damages claims and from injunctive relief claims, Your Honor. And part of the Butts analysis is whether or not there's redress or review. Is that right? Yes, Your Honor. And what is the redress or review that's available in an instance like this? There isn't per se judicial review here, Your Honor, but there was and there is a form of review under the Executive Office for Immigration Reviews administrative procedure to complain about immigration judges, and that was taken up here by Professor Stevens, Your Honor. Right. And so there's no per se judicial review, and the review taken up here involved the Office of Legislative Affairs, which I thought was an interesting gloss on like an IA or OIG inquiry, and did not involve interviewing the complainant or an eyewitness to the events in the courtroom. Your Honor, the review taken up here was by the Office of the Chief Immigration Judge, and that's an Attorney General delegated office to review immigration judge complaints. There is nothing in the administrative procedure for reviewing complaints against immigration judges that requires someone in Defendant Smith's position, the investigating immigration judge, to interview the claimant. There's nothing requiring him to have interviewed Ms. Stevens, Your Honor. So the redress could be anything and fulfill the Butts requirement? I don't know that the redress could be anything, Your Honor, but here we have a formalized system within the agency at issue for reviewing complaints against immigration judges, and that's what occurred here, Your Honor. Thank you. Any other questions? Do you want to conclude? Do you have a conclusion? I see the amount of time here, Your Honors. I would just like to reiterate that judicial immunity does apply to immigration judges in order to maintain their judicial independence and in order to foster courtroom control, which is something that all judges must have in order to maintain this system.  Thank you, Your Honors. Thank you, Your Honors. Your Honors, first, I'd like to take up the last issue first, and that is the adequacy of relief that was afforded to Appellant Stevens in the aftermath of this. As the district court found, the procedural, sort of the administrative remedy that's offered by Eeyore, as she held as a matter of law, conferred no substantive or procedural rights upon the appellant. And so she, and that is why we lost our Bivens action against the officers who, and we didn't, we haven't appealed that ruling, but we also sued the officials who conducted that review. And even though that Judge Evans said that those officials were not entitled to immunity, that our underlying claim didn't state a claim for relief because the remedy that the appellees just described gave the petitioner nothing. And so there is no remedy, going back to the Butts test, there is no remedy for a citizen like Judge Cassidy. What is worse about if... I don't, I don't understand, Mr. Brown. When people complain about Article 3s, and they do, there is an administrative process for that, too. Which I've not, we're still listening and thinking. But, I mean, I don't know that a litigant has a lot of powers, rights, or even gets a remedy, in the terms I would think of a remedy, from pursuing the Article 3 process. But it is thought to be a real process. You don't want to have to go and talk to the Chief Judge, and you don't want to have to have a nasty letter written to you, and you don't want to have a nasty letter written and put up in the courthouse. So, how, I'm not sure that I understand how inherently inadequate it is to have a complaint made up the chain. I mean, you could do it other ways. I understand you could do it other ways. But what's inherently bad about that, particularly keeping in mind the Article 3 mechanism? Sure, Your Honor. There's no requirement under Bivens or the federal common law that we establish that there's absolutely no other possible remedy, however meager. That's not our burden to show. Instead, our burden is to show that, under the case law, I believe, is that is this type of federal official, and it's a federal official, we can call him a judge or not, entitled to what Judge Posner and Justice O'Connor called the strong medicine of absolute immunity. And why is it strong medicine? Strong medicine because it's very rigid. And under the court's holding in Boland v. Story, it even applies to injunctive relief. So, to hold that Judge Cassidy has absolute immunity generally and then specifically for this action, what the federal courts are saying is that they are powerless, Article 3 judges are powerless to address what is going on down there because those special inquiry officers are beyond our reach. Because although we have established in Marbury v. Madison the right for injunctive relief for a federal claim, and we've established in Bivens in the 1970s damages, that because they call themselves judges now, that they are beyond the reach of a federal court when they are plainly violating a citizen's First Amendment rights. That cannot be the result. Now, the ways around that are many. You could hold that as a class they don't have immunity, which is certainly defensible under Butts, or you could say even if they do, here they've admitted they don't have specific jurisdiction over the federal protective service that they ordered, and they don't have any sort of inherent authority, and that's established by the statute. But we don't have any jurisdiction. You've been around the federal courts a long time. I don't think we have any federal jurisdiction over the U.S. Marshals Service either. I mean, when I was chief judge of the circuit, I worked with the Marshals Service. Fine people, love each and every one. But I'm not their boss. So if I tell them, take somebody out of the courtroom here, and let's assume that I would be entirely justified, they might do it, and they might not, because I'm not their boss. So I don't know. I mean, what are you telling me about he's not their boss? I mean, let's assume he told them to do it, then they might do it or they might not. If they did do it, then sure, he's still involved. I'm not trying to get him free, but I just don't know what that means. We're not relying on it. I think your point is exactly right. We are not relying exclusively on the fact that the Federal Protective Service officers aren't in the chain of command to Judge Cassidy. But we are relying on the testimony of Summers, who is the head of the FBS down there, that says Cassidy has no jurisdiction. And we're also relying on the testimony of lawyer Reed, Lauren Reed, who is a lawyer for E.R., saying that he has no jurisdiction over that building. That's not even an E.R. building. They've got the Justice Department down there, Your Honor. They've got the Department of Homeland Security. And one floor are these small hearing rooms. Well, you know, there are buildings, you know, there are plenty of buildings in the United States where the Federal Court is a one tenant. Russell Building. Yeah. Right. And this is a different case, but we're talking, you know. I don't have any problem with an Article III judge over in the Russell Building under certain circumstances saying, get this guy, take him to the elevator, take him downstairs, walk him down to the sidewalk, and tell him if he steps back on the sidewalk, he's coming right up to see me face to face. I'm pretty sure that you're not only immune to that, but I think it's lawful. Right. And even if you went further and did something that was unlawful, under the cases, you would probably be immune from the damages. Right. And you can see what my trouble is. If he's a judge, why can't he do it too? There's two ways to address that, and we will win either way, Your Honor. One of the reasons why we have stress in our briefing and in the discussion, the inherent authority. We believe that it is a very important point that Your Honor and Judge Carnes and Judge Williams, when they're on the district court, had and now have inherent authority. And the cases say that officials like Judge Cassidy do not have inherent authority. We use that all the time, litigants use that all the time in dealing with judges, is that there's this idea in our system that an actual judge has that inherent authority, backed up with what Congress has said, which is very, Congress on this is very specific. With the U.S. magistrates, Congress has said, U.S. magistrates, you have contempt authority for people in your presence. Even magistrates could not do this. My point in that is not to put too much of a fine line on the jurisdictional borders, but just that if you look at the Supreme Court cases in Stump and in Morales v. Waco, the Supreme Court looks right to the statute that gave those state court judges the authority for doing in general what they were doing, not the specific bad act, but in general the type of activity. And they found it. And if they hadn't have found it, they wouldn't have given that judge immunity for those actions. Here, if the court went through the same inquiry and said, okay, what in general was Cassidy working under? He has no authority over the building. He has no authority under the FPS. He has no authority for contempt except for monetary sanctions. He has given, under the law, he has no inherent authority. It's an article, it's not an Article III judge with any sort of general or state court judge with general jurisdiction. What you would be saying is we find no, absolutely no basis for this judge's jurisdiction, number one. And number two, there is to get to your argument, your statement about Judge Williams, about a judicial decision. You cannot say with a straight face, with all due respect, that tossing a professor from a federal court building is a judicial function or was involved in the adjudicatory process. Now, the argument that the government makes is that this all stemmed from, was related to a court case. It's sort of like cheese food product is like cheese because it's made near a factory that makes cheese. But, Your Honors, it is not anything to do, and the Supreme Court rejected the same argument in, I think, our best case, which is Forrester v. White, and I see that I'm over time. But in Forrester v. White, the Seventh Circuit decided that Judge White did have immunity to fire a probation officer because the operation of the probation officer was inextricably entwined with the judge's work as a judge. Seventh Circuit said, therefore, since it's inextricably entwined, you've got absolute immunity. Posner, Judge Posner, dissented. It went up to the Supreme Court, unanimously reversed, and said it's not whether it's inextricably entwined. It's not whether, as the government says today, it stemmed from a judicial decision. It's whether it really was a judicial decision. Here, this is nothing adjudicatory about throwing somebody out of the federal building. It's the same action that a policeman would take, and it's entitled to the same, no less, no more immunity. Thank you, Your Honor. Thank you, Mr. Brown. We are going to take a ten-minute recess before beginning the last case.